UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

MICHAEL FONTANAROSA,

                              Plaintiff,               **MEMORANDUM & ORDER**
                                                    13-CV-03285 (MKB)

           v.

CAROLYN W. COLVIN, *Acting Commissioner of
Social Security Administration*,

                              Defendant.
-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Michael Fontanarosa filed the above-captioned action seeking review pursuant

to 42 U.S.C. § 405(g) of a final decision of Defendant Carolyn W. Colvin, acting Commissioner

of Social Security, denying his application for disability insurance benefits. Defendant moves

for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure,

claiming that the Commissioner's decision is supported by substantial evidence and should be

affirmed. Plaintiff cross-moves for judgment on the pleadings, arguing that Administrative Law

Judge Patrick Kilgannon ("ALJ") failed to satisfy his duties in several aspects: (1) the ALJ failed

to address the evidence of Plaintiff's treating physician; (2) the residual functional capacity

determined by the Commissioner is not supported by substantial evidence; and (3) the ALJ did

not correctly assess Plaintiff's credibility. For the reasons set forth below, Defendant's motion is

denied and Plaintiff's motion for judgment on the pleadings is granted.

## I.   Background

      Plaintiff was born in 1958. (R. at 39.) Plaintiff filed an application for disability

insurance benefits on April 27, 2010, because of his depression, dizziness due to transient

ischemic attack,[1] torn menisci and cervical and lumbar radiculopathy. (*Id.* at 22, 135.) Plaintiff's application for disability benefits was denied. (*Id.* at 22.) Thereafter, Plaintiff requested a hearing, which was held on October 11, 2011, before the ALJ. (*Id.*) At the hearing, Plaintiff and a vocational expert testified. (*Id.*) By decision dated October 26, 2011, the ALJ found that Plaintiff was not disabled. (*Id.* at 29.) On April 9, 2013, the Appeals Council denied review of the ALJ decision. (*Id.* at 1–5.)

### a. Plaintiff's testimony

Plaintiff graduated from high school in 1976. (*Id.* at 39–40, 136.) He is single, without employment or income, receives food stamps, and lives with his parents in Staten Island, New York. (*Id.* at 39, 108)

Plaintiff testified that his left knee and constant dizziness constitute his main medical impairments. (*Id.* at 43.) The dizziness results from a "clogged artery in [Plaintiff's] head." (*Id.*) Plaintiff has undergone two surgeries, one for his knee in the 1990s and another for his shoulder in the late 1980s. (*Id.* at 43–44.) Plaintiff was being treated by an orthopedist, Dr. Suarez, and a neurologist, Dr. Krishna. (*Id.* at 44.) Plaintiff used to attend physical therapy but lost coverage for such treatment. (*Id.*) Plaintiff received no mental health treatment. (*Id.*) Plaintiff, at the time of the hearing, was taking Plavix, Xanax, and Percocet. (*Id.* at 48.)

Plaintiff testified that he is "really limited" and "didn't do much" due to his pain and side effects of his pain medication during a typical day. (*Id.* at 45–46.) He does not do laundry, gardening or cooking. (*Id.* at 45.) Although octogenarians, his parents help him more than he helps them. (*Id.*) With respect to Plaintiff's pain, he cannot stand longer than approximately ten to twelve minutes before feeling "very uncomfortable and hurting" in his knees and lower back.

---

[1] "A transient ischemic attack is commonly referred to as a mini stroke." *Laurent v. G & G Bus Serv., Inc.*, No. 10-CV-4055, 2013 WL 5354733, at *6 n.3 (S.D.N.Y. Sept. 25, 2013).

(*Id.* at 46–47.)  Even sitting longer than twenty minutes results in lower back pain and knee "cramping."  (*Id.* at 48.)

### b.  Plaintiff's work history

Plaintiff testified at the ALJ hearing that he worked in flooring as a carpet mechanic for approximately thirty years.  (*Id.* at 41, 43.)  After fifteen years, Plaintiff had a knee operation and could not continue the same work.[2]  (*Id.* at 43.)  Plaintiff later worked, for approximately five or six months, as a security guard.  (*Id.* at 42, 137.)  His security guard job involved a lot of standing and walking, looking for illegally-parked cars.  (*Id.* at 42)  He did not lift or carry anything for this job, instead he "would just walk and stand all day."  (*Id.* at 145.)  For some period of time Plaintiff worked as a sales associate at Home Depot.  (*Id.* at 40.)  Plaintiff took too many days off due to his inability to stand on his legs and frequent dizziness.  (*Id.* at 41.)  He was terminated due to his absences.  (*Id.*)  Since Plaintiff's alleged disability onset date of December 31, 2006, Plaintiff has only worked as a porter at a supermarket from October 2008 to December 2008.  (*Id.* at 127.)  Plaintiff quit his supermarket job due to his "medical condition."  (*Id.*)

### c.  Vocational expert's testimony

Doctor Steven H. Feinstein testified at the hearing as the vocational expert.  (*Id.* at 49.)  Dr. Feinstein described Plaintiff's flooring work as SVP-7 heavy, his security guard job as SVP-3 light, his sales job as SVP-4 light, and his porter job as SVP-2 heavy.[3]  (*Id.*)  The ALJ then

---

[2]  The specifics of Plaintiff's job history as a carpet mechanic in flooring is unclear from the record.  On Plaintiff's "Disability Report" Form SSA-3368, he lists his employment as a carpet installer from 1995 to 2003.  (R. at 137.)  On Plaintiff's "Work History Report," he lists working as a carpet installer from 1976 to 2002.  (*Id.* at 143.)  The ALJ made no factual finding as to the precise length of Plaintiff's employment history.

[3]  "SVP stands for 'specific vocational preparation,' and refers to the amount of time it takes an individual to learn to do a given job."  *Urena-Perez v. Astrue*, No. 06-CV-2589, 2009 WL 1726217, at *20 n.43 (S.D.N.Y. Jan. 6, 2009) (quoting Jeffrey Scott Wolfe & Lisa B.

described a hypothetical person to Dr. Feinstein, based on the same age, education and work experience as the Plaintiff. (*Id.* at 50.) The hypothetical involved the following description:

> Postural limitations. No climbing of ladders, ropes, scaffolds. Occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling. No manipulative, visual or communicative limitations. In terms of environmental limitations, this individual should avoid concentrated exposure to unprotected heights.

(*Id.*) Dr. Feinstein stated that an individual with the above-described limitations could perform Plaintiff's past security guard work. Dr. Feinstein also stated that even if the job were that of a parking lot attendant, SVP-2 light, his answer remained the same. (*Id.* at 51.) Dr. Feinstein's answer remained constant even if the job should be "low-stress employment meaning only occasional[] decision making required and only occasional change[] in the work setting." (*Id.* at 52.)

### d. Medical evidence

#### i. Doctor P. Kudler[4]

On April 27, 2010, Dr. Kudler gave Plaintiff a primary diagnosis of "affective disorder," a secondary diagnosis of "muscle, ligament and fascia disorders" and determined that Plaintiff was not disabled. (*Id.* at 54.) On July 8, 2010, Dr. Kudler diagnosed Plaintiff with adjustment disorder. (*Id.* at 243.) Dr. Kudler determined that Plaintiff could follow and understand simple directions and instructions, perform tasks independently, maintain attention and concentration, and maintain a regular schedule. (*Id.*)

---

Proszek, *Social Security Disability and the Legal Profession* 163 (2002)), *report and recommendation adopted as modified*, No. 06-CV-2589, 2009 WL 1726212 (S.D.N.Y. June 18, 2009).

[4] Dr. Kudler's full name does not appear in the administrative record.

### ii. Doctor Ranga C. Krishna

Plaintiff first saw Doctor Ranga C. Krishna, of Total Neuro Care P.C., on September 26, 2009. (*Id.* at 139.) On September 29, 2009, Dr. Krishna performed an electromyogram test on Plaintiff. (*Id.* at 177.) Dr. Krishna found that the test revealed evidence of chronic right C5-C6 cervical and chronic right L5-S1 lumbosacral radiculopathies.[5] (*Id.* at 188.) The test also showed evidence of a moderate bilateral sensorimotor median nerve neuropathy at the wrist, consistent with the clinical diagnosis of carpal tunnel syndrome. (*Id.*) Dr. Krishna recommended that Plaintiff restrict his physical activity, meaning no prolonged standing, walking or sitting. (*Id.*)

In a letter dated April 13, 2010, Dr. Krishna noted that Plaintiff has difficulty walking and climbing stairs, and that he is "totally disabled and is unable to work in any functional capacity."[6] (*Id.* at 290.)

On August 16, 2010, Dr. Krishna completed a functional capacity questionnaire in which he stated that Plaintiff could carry "very little weight," and could not stand for more than thirty minutes in the course of an eight hour workday.[7] (*Id.* at 250.)

---

[5] "Radiculopathy is '[d]isorder of the spinal nerve roots.'" *Agapito v. Colvin*, 12-CV-2108, 2014 WL 774689, at *6 n.10 (S.D.N.Y. Feb. 20, 2014) (quoting *Stedman's Medical Dictionary* at 1503 (27th ed. 2000)).

[6] The parties disagree as to whether this letter was in the record before the ALJ. The letter and its findings were directly cited, and ostensibly included, in a November 2, 2010 pre-hearing brief ("Pre-hearing Brief") submitted to the Office of Disability Adjudication and Review. (*Id.* at 249–52.) The parties agree that it was included in the materials presented to the Appeals Council upon review of the ALJ's decision. (*See* Pl. Mem. 5; Def. Mem. 10.)

[7] The questionnaire itself is not produced in the administrative record provided by Defendant. However it is discussed by Plaintiff's counsel, and was seemingly submitted with Plaintiff's Pre-hearing Brief. (R. at 249–252; *see also* Pl. Mem. 5 (noting that the questionnaire was submitted and summarized below but not included in the instant administrative record).)

On September 17, 2010, Dr. Krishna performed another electromyogram, which revealed evidence of chronic right C5-6 cervical radiculopathy and evidence of chronic right L5-S1 lumbosacral radiculopathy. (*Id.* at 295.)

On February 21, 2012, Dr. Krishna performed an electromyogram test which revealed evidence of chronic right C5-C6 cervical and chronic right L5-S1 lumbosacral radiculpathies.[8] (*Id.* at 299.)

On March 6, 2012, Dr. Krishna noted a decreased range of motion "at knee" with swelling and tenderness.[9] (*Id.* at 289.) Plaintiff's Lachman and anterior drawer test were positive. (*Id.*) Flexion and extension of the knee was limited to 30 degrees. (*Id.*)

On March 19, 2012, in a "Physician's Note," Dr. Krishna found Plaintiff to be "totally disabled" and unable to work in any functional capacity due to his ankle joint pain, herniated discs and cervical and lumbar radiculopathy.[10] (*Id.* at 300.)

Finally, in an undated report, Dr. Krishna determined that Plaintiff sustained a cervical and lumbar strain injury, cervical and lumbar disk resulting in a neuropathic pain syndrome, right knee derangement, and worsening lumbar disc with worsening neuropathic pain.[11] (*Id.* at 292.)

---

Defendant represents that although mentioned in Plaintiff's Pre-hearing Brief, the questionnaire was not actually included. (Def. Opp'n Mem. 3.)

[8] This document was not before the ALJ but submitted to the Appeals Council in conjunction with Plaintiff's request for review of the ALJ's decision. (Pl. Mem. 11.)

[9] This document was not before the ALJ but submitted to the Appeals Council in conjunction with Plaintiff's request for review of the ALJ's decision. (*Id.* at 10.)

[10] This document was not before the ALJ but submitted to the Appeals Council in conjunction with Plaintiff's request for review of the ALJ's decision. (*Id.*)

[11] This document was not before the ALJ but submitted to the Appeals Council in conjunction with Plaintiff's request for review of the ALJ's decision. (*Id.*) In addition, it is not

Dr. Krishna noted a positive straight leg raising test on the right side at 30 degrees, an antalgic gait, and palpable point tenderness.  (*Id.*)  Forward flexion of the thoracolumbar spine was performed to 30 to 50 degrees and forward flexion of the cervical spine was limited to 30 degrees.  (*Id.*)  Dr. Krishna recommended that Plaintiff obtain orthopedic consultation, and if the symptoms failed to improve, explore knee braces, ankle surgery, and physical therapy.  (*Id.*)  Dr. Krishna noted that his prognosis "is guarded due to the nature, severity, and permanency of the outlined injuries."  (*Id.* at 293.)

### iii.   Certified physician's assistant Thomas Detey

On September 16, 2010, Thomas Detey, PA-C (physician's assistant), completed a "Treating Physician's Wellness Plan Report."  (*Id.* at 245.)  He noted that Plaintiff had torn menisci, in addition to degenerative arthritis.  (*Id.* at 245–247.)  There was pain and edema of both knees and Detey noted that the Plaintiff's MRIs showed meniscus tear and arthritis in both knees.  (*Id.*)  Plaintiff was prescribed non-steroidal anti-inflammatory drugs and physical therapy.  (*Id.*)  Detey also indicated that Plaintiff had a permanent disability of bilateral knee arthritis, was unable to work for at least twelve months and may be eligible for long-term disability benefits.[12]  (*Id.*)

### iv.   Magnetic resonance imaging results

On referral from Dr. Krishna, Plaintiff underwent a series of MRIs of his knees, ankles and brain.  On January 9, 2010, Dr. Harold S. Parnes performed an MRI of Plaintiff's left knee.  (*Id.* at 184.)  Dr. Parnes found joint fluid, soft tissue swelling, postoperative changes, and a tear

---

clear if this report pre-dates or post-dates the ALJ's October 2011 decision.  (*Id.*)

[12]  On Detey's report, the box indicating that Plaintiff had "no functional limitations" was also checked.  (*Id.* at 247.)  However, this was in error as indicated by the word "error" handwritten beside the box and Detey's initial's along with the date.  (*Id.*)

through the two menisci.  (*Id.* at 185.)  Dr. Parnes recommended "followup."  (*Id.* at 186.)

On March 26, 2010, Dr. Parnes performed an MRI of Plaintiff's right knee.  (*Id.* at 189.)  Dr. Parnes found a "baker cyst," joint fluid, soft tissue swelling, a meniscus tear, and recommended other diagnostic studies and tests.  (*Id.* at 190.)

On March 3, 2011, Dr. Parnes performed an MRI of Plaintiff's right ankle.  (*Id.* at 255.)  Dr. Parnes noted joint fluid at the tibiotalar joint space, a questionable contusion at the distal fibula, a questionable arthritic process which needed to be evaluated, a sprain or strain in the Achilles tendon, evidence of some soft tissue swelling anterior and posterior to the distal Achilles tendon and mild degenerative changes involving the midfoot region.  (*Id.* at 255.)  Dr. Parnes recommended further diagnostic studies and tests.  (*Id.* at 256.)

On April 1, 2011, Dr. Parnes performed an MRI of Plaintiff's left ankle.  (*Id.* at 257.)  Dr. Parnes noted joint fluid at the tibiotalar joint space, retrocalcaneal bursitis, soft tissue swelling at the level of the medial and lateral malleoli, and a posterior tibial tendon tear with surrounding edema.  (*Id.*)  Further diagnostic studies and tests were recommended.  (*Id.* at 258.)

On February 20, 2012, Dr. Parnes performed an MRI of Plaintiff's lumbosacral and cervical spine.[13]  (*Id.* at 274, 276.)  With respect to Plaintiff's lumbosacral spine, Dr. Parnes noted multilevel disc space narrowing and desiccation and facet hypertrophic arthropathy.  (*Id.* at 274.)  Posterior disc herniations and disc protrusions were also noted.  (*Id.*)  With respect to Plaintiff's cervical spine, Dr. Parnes noted multilevel disc space narrowing, dessication and endplate degenerative changes, mucous thickening in the right maxillary sinus, and posterior disc herniations.  (*Id.* at 276.)

---

[13]  This document was not before the ALJ but submitted to the Appeals Council in conjunction with Plaintiff's request for review of the ALJ's decision.  (Pl. Mem. 11.)

On March 12, 2012, Dr. Parnes performed an MRI of Plaintiff's left knee.[14] (*Id.* at 271.) Dr. Parnes noted joint fluid, degenerative changes, sprain or strain of the lateral collateral ligament, moderate intrameniscal degenerative signal, soft tissue swelling, a tear through the anterior horn, body and posterior horn of the medial meniscus, and mild to moderate degenerative changes involving the patellofemoral joint. (*Id.* at 271–72.)

On March 14, 2012, Dr. Parnes performed an MRI of Plaintiff's right knee.[15] (*Id.* at 268.) Dr. Parnes noted mild to moderate degenerative changes involving the patellofemoral joint, small medial and lateral joint compartment osteophytic changes, a sprain or strain of the lateral collateral ligament, moderate intrameniscal degenerative signal, and a tear through the posterior horn and body of the medial meniscus. (*Id.* at 268–69.)

### v. Doctor Joseph A. Suarez

On May 17, 2011, Plaintiff visited Doctor Joseph A. Suarez. (*Id.* at 260.) Dr. Suarez noted that Plaintiff had pain during range of motion tests of the cervical and lumbar spine. (*Id.*) Dr. Suarez also noted bilateral knee pain with tenderness and pain in the medial side of both knees and a lack of about twenty degrees of full flexion in both knees. (*Id.*) Dr. Suarez noted that his office ordered MRIs of Plaintiff's cervical spine and lumbar spine. Dr. Suarez's impression was that Plaintiff had cervical and lumbar-sacral spine degenerative disc disease, osteoarthritis of both knees and early degenerative changes of both knees. (*Id.* at 261.) Dr. Suarez noted that these problems would not improve and that the patient "should think about retiring" as he could not "really work now at any type of gainful employment." (*Id.*) On June

---

[14] This document was not before the ALJ but submitted to the Appeals Council in conjunction with Plaintiff's request for review of the ALJ's decision. (*Id.*)

[15] This document was not before the ALJ but submitted to the Appeals Council in conjunction with Plaintiff's request for review of the ALJ's decision. (*Id.*)

14, 2011, Dr. Suarez, after receiving Plaintiff's MRI of the cervical spine, wrote in a letter that

test showed degenerative disc disease "which is chronic and because of the cervical spine and

lumbar spine chronic problems and bilateral knee osteoarthritis, the patient is totally disabled and

unable to perform any type of gainful employment." (*Id.* at 263.)

On January 18, 2012, Dr. Suarez wrote another letter reiterating that Plaintiff's lumbar

and cervical spine pain was chronic, had not improved, and would be permanent.[16] (*Id.* at 266.)

### vi.  Doctor Chitoor Govindaraj

On June 28, 2010, Doctor Chitoor Govindaraj performed a consultive evaluation of

Plaintiff and diagnosed Plaintiff with a history of left knee degenerative arthritis, past history of

medial meniscus tear, post degenerative arthritis of the right knee with meniscus tear and baker

cyst and a "[h]istory of carpal tunnel syndrome on the right secondary to C5-C6 cervical

radiculopathy." (*Id.* at 222, 224.)  Plaintiff's reflexes were normal, range of motion of both

knees was normal, range of motion of the spine was normal, and straight leg raising was normal.

(*Id.*)  Dr. Govindaraj determined that Plaintiff did not need a cane, and that Plaintiff's overall

medical prognosis was good and cleared Plaintiff for "occupation." (*Id.*)  Dr. Govindaraj noted

that Plaintiff had taken 1mg of alprazolam (Xanax) four times a day for anxiety for the past six

months and 75mg of Plavix once a day, but that Plaintiff was not then currently taking any

medication. (*Id.* at 22.)

---

[16]  This document was not before the ALJ but submitted to the Appeals Council in conjunction with Plaintiff's request for review of the ALJ's decision.  (Pl. Mem. 11.)

### vii.   Disability analyst W. Knoble[17]

On July 8, 2010, W. Knoble, a disability analyst, found Plaintiff's allegation that he could not walk for more than a block to not be credible.  (*Id.* at 219.)  Knoble also found that Plaintiff did not establish any visual limitations, manipulative limitations or postural limitations.  (*Id.* at 217–18.)  Knoble determined that Plaintiff could occasionally lift or carry up to fifty pounds, frequently lift or carry up to twenty-five pounds, stand and/or walk about six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday.  (*Id.* at 217.)

### viii.   Doctor Richard King

On June 20, 2010, Doctor Richard King, after a consultative evaluation, found Plaintiff anxious and depressed to a mild degree, and to have an adjustment disorder of adult life.  (*Id.* at 213.)  Dr. King determined that Plaintiff could manage his own funds, had a satisfactory ability to follow simple instructions and perform simple tasks.  (*Id.*)  Moreover, Dr. King found that Plaintiff had a satisfactory ability to follow complex instructions and perform complex tasks, and interact with others in a work setting.  (*Id.*)

### e.   The ALJ's decision

The ALJ conducted the five-step sequential analysis as required, and more fully discussed below.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2006.  (*Id.* at 24.)  Second, the ALJ determined that Plaintiff has the following severe impairments: "degenerative cervical and lumbosacral disc disease and degenerative joint disease."  (*Id.*)  Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in Appendix 1 of the regulations.  (*Id.* at 25.)  The ALJ specifically considered Listing 1.02 for

---

[17]   Knoble's full name does not appear in the record.

major dysfunction of a joint and Listing 1.04 for disorders of the spine. (*Id.* at 25–26.) With respect to Listing 1.02, the ALJ recognized that Plaintiff had a knee impairment but found no evidence to support the conclusion that the impairment resulted in Plaintiff's inability to "ambulate effectively" as required under Listing 1.02. (*Id.* at 26.) As for Listing 1.04, the ALJ acknowledged Plaintiff's diagnosis of degenerative disc disease but found that there was no evidence of "neuro-anatomical distribution of pain or that there exists any sensory or reflex loss" as required under Listing 1.04. (*Id.*) The ALJ noted that Dr. Govindaraj found that Plaintiff "exhibited a range of motion within normal limits." (*Id.*)

Fourth, the ALJ determined that Plaintiff had "the residual functional capacity ['RFC'] to perform light work." (*Id.*) The ALJ found that Plaintiff must avoid concentrated exposure to unprotected heights and could not climb ladders, ropes or scaffolds but could occasionally climb ramps and stairs, balance, stoop, kneel, couch and crawl. (*Id.*) The ALJ found Plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms" not credible to the extent that they were inconsistent with the ALJ's determination of Plaintiff's RFC. (*Id.* at 27.) In coming to this determination, the ALJ recognized the medical findings within the following documents: (1) September 29, 2009 nerve conduction study; (2) October 10, 2009 nerve report; (3) January 9, 2010 MRI of the left knee; (4) March 3, 2011 MRI of the right ankle; (5) April 1, 2011 MRI of the left ankle; (6) June 28, 2010 consultative examination by Dr. Govindaraj; (7) September 16, 2010 PA-C report;[18] (8) Letters sent by Dr. Suarez; (9) June 20, 2010 consultative examination by Dr. King; (10) Assessment by Dr. Kudler. (*Id.* at 27–28.) Although acknowledging these findings, the ALJ noted that Plaintiff had not undergone any

---

[18] The ALJ erroneously refers to this as a September 10, 2010 "FEG" report, (R. at 27), while it was actually dated September 16, 2010, (*id.* at 247).

surgery, injections or anything more than physical therapy. (*Id.*) The ALJ also found that Dr.

Govindaraj's opinion deserved "substantial weight" as an "examining physician whose opinion

is consistent with the medical evidence of record." (*Id.* at 28.) The ALJ admonished the

statements of Dr. Suarez labeling Plaintiff as disabled, characterizing them as "no more than

attempts to usurp the Commissioner's authority with regard to the finding of disability." (*Id.*)

Furthermore, the ALJ found that Dr. Suarez offered no opinion as to Plaintiff's "actual physical

limitations or abilities." (*Id.*)

Finally, the ALJ determined that Plaintiff is capable of performing past relevant work as

a security guard because such a position does not require activity precluded by the RFC

assessment. (*Id.* at 29.)

## II. Discussion

### a. Standard of Review

In reviewing a final decision of the Commissioner, a district court must determine "if

there is substantial evidence, considering the record as a whole, to support the Commissioner's

decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172,

175–76 (2d Cir. 2013) (per curiam) (quoting *Kohler v. Astrue*, 546 F.3d 260, 264–65 (2d Cir.

2008)); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). Substantial

evidence requires "more than a mere scintilla." *Selian*, 708 F.3d at 417 (quoting *Richardson v.

Perales*, 402 U.S. 389, 401 (1971)); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting

*Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)). "It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417

(citation and internal quotation marks omitted). Once an ALJ finds facts, the court "can reject

those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec.

Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (citations and internal quotation marks omitted). In

deciding whether substantial evidence exists, the court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). The Commissioner's factual findings "must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citation and internal quotations omitted). If, however, the Commissioner's decision is not supported by substantial evidence or is based on legal error, a court may set aside the decision of the Commissioner. *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998); *see Box v. Colvin*, --- F. Supp. 2d ---, ---, 2014 WL 997553, at *13 (E.D.N.Y. Mar. 14, 2014) ("When reviewing the decision of the Commissioner, the Court may set aside the determination only if the decision was based on legal error or was not supported by substantial evidence in the administrative record."). "The Act must be liberally applied, for it is a remedial statute intended to include not exclude." *Moran*, 569 F.3d at 112 (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

      **b. Availability of benefits**

Federal disability insurance benefits are available to individuals who are "disabled" within the meaning of the Social Security Act (the "Act"). To be eligible for disability benefits under the Act, the plaintiff must establish his or her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Commissioner has promulgated a five-step analysis for evaluating disability claims. 20 C.F.R. § 404.1520. The Second Circuit has described the steps as follows:

> The first step of this process requires the [Commissioner] to determine whether the claimant is presently employed. If the claimant is not employed, the [Commissioner] then determines whether the claimant has a "severe impairment" that limits her capacity to work. If the claimant has such an impairment, the [Commissioner] next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the [Commissioner] will find the claimant disabled. However, if the claimant does not have a listed impairment, the [Commissioner] must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform her past relevant work. Finally, if the claimant is unable to perform her past relevant work, the [Commissioner] determines whether the claimant is capable of performing any other work. If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working.

*Kohler*, 546 F.3d at 265 (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

### c. Analysis

Defendant moves for judgment on the pleadings, claiming that the Commissioner's decision is supported by substantial evidence and should be affirmed. Plaintiff cross-moves for judgment on the pleadings, arguing that reversal is proper based on the following legal errors: (1) the ALJ failed to address the evidence of Plaintiff's treating physician; (2) the RFC determined by the Commissioner is not supported by substantial evidence; and (3) the ALJ did not correctly assess Plaintiff's credibility.

#### i. Treating physician rule and the duty to develop the record

Plaintiff argues that the ALJ erred in not addressing the medical evidence and opinion of Dr. Krishna. (Pl. Mem. 17.) Defendant argues that the ALJ considered Dr. Krishna's report and correctly concluded that objective findings contained therein did not preclude the Plaintiff from performing "light work." (Def. Opp'n Mem. 2.)

"A treating physician's statement that the claimant is disabled cannot itself be determinative." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)); *Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012). But a treating physician's opinion on the "nature and severity" of the plaintiff's impairments will be given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the plaintiff's] case record." 20 C.F.R. § 404.1527(c)(2); *see Matta v. Astrue*, 508 F. App'x 53, 57 (2d Cir. 2013) (discussing the treating physician rule); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place[s] him in a unique position to make a complete and accurate diagnosis of his patient." (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (per curiam)); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (discussing treating physician rule). A treating source is defined as a plaintiff's "own physician, psychologist, or other acceptable medical source" who has provided plaintiff "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the plaintiff]." 20 C.F.R. § 404.1502; *Bailey v. Astrue*, 815 F. Supp. 2d 590, 597 (E.D.N.Y. 2011).

An ALJ must consider various factors in determining how much weight to give a treating physician's opinion. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). Specifically, the ALJ should consider: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian*, 708 F.3d at 418 (citing *Burgess*, 537 F.3d at 129); *see also Halloran*, 362

F.3d at 32 (discussing the factors). The ALJ must set forth the reasons for the weight he or she

assigns to the treating physician's opinion. *Halloran*, 362 F.3d at 32. The ALJ is not required to

explicitly discuss the factors, but it must be clear from the decision that the proper analysis was

undertaken. *See Petrie*, 412 F. App'x at 406 ("[W]here 'the evidence of record permits us to

glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of

testimony presented to him or have explained why he considered particular evidence

unpersuasive or insufficient to lead him to a conclusion of disability.'" (quoting *Mongeur*, 722

F.2d at 1040)). Failure "to provide good reasons for not crediting the opinion of a claimant's

treating physician is a ground for remand." *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 77

(2d Cir. 2012); *see also Halloran*, 362 F.3d at 32–33.

Before determining whether the Commissioner's decision is supported by substantial

evidence, the court "must first be satisfied that the claimant has had a full hearing under the

regulations and in accordance with the beneficent purposes of the Act." *Moran*, 569 F.3d at 112

(alterations omitted) (quoting *Cruz*, 912 F.2d at 11); *see also Perez*, 77 F.3d at 47 ("Because a

hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an

affirmative obligation to develop the administrative record."). The ALJ has a threshold duty to

adequately develop the record before deciding the appropriate weight to give the treating

physician's opinion. *Burgess*, 537 F.3d at 129 ("[A]n ALJ cannot reject a treating physician's

diagnosis without first attempting to fill any clear gaps in the administrative record." (quoting

*Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999))); *Collins v. Comm'r of Soc. Sec.*, No. 11-CV-

5023, 2013 WL 1193067, at *9–10 (E.D.N.Y. Mar. 22, 2013) (remanding for failure to develop

the record); *Hinds v. Barnhart*, No. 03-CV-6509, 2005 WL 1342766, at *10 (E.D.N.Y. Apr. 18,

2005) ("The requirement that an ALJ clarify a treating source's opinion that a claimant is unable

to work is part of the ALJ's affirmative obligation to develop a claimant's medical history."); *Pabon v. Barnhart*, 273 F. Supp. 2d 506, 514 (S.D.N.Y. 2003) ("[T]he duty to develop a full record . . . compels the ALJ . . . to obtain from the treating source expert opinions as to the nature and severity of the claimed disability . . . .  Until he satisfies this threshold requirement, the ALJ cannot even begin to discharge his duties . . . under the treating physician rule." (alterations in original) (quoting *Peed v. Sullivan*, 78 F. Supp. 1241, 1246 (E.D.N.Y. 1991))).  "Because of the considerable weight ordinarily accorded to the opinions of treating physicians, an ALJ's duty to develop the record on this issue is 'all the more important.'"  *Rocchio v. Astrue*, No. 08-CV-3796, 2010 WL 5563842, at *11 (S.D.N.Y. Nov. 19, 2010) (citation omitted), *report and recommendation adopted*, No. 08-CV-3796, 2011 WL 1197752 (S.D.N.Y. Mar. 28, 2011).  An ALJ's "failure to develop the record adequately is an independent ground for vacating the ALJ's decision and remanding the case."  *Green v. Astrue*, No. 08-CV-8435, 2012 WL 1414294, at *14 (S.D.N.Y. Apr. 24, 2012) (citing *Moran*, 569 F.3d at 114–15), *report and recommendation adopted*, No. 08-CV-8435, 2012 WL 3069570 (S.D.N.Y. July 26, 2012).

For the reasons discussed below, the Court finds that (1) the ALJ failed to adequately explain his reasons for affording little weight to the medical opinion of Plaintiff's treating physician Dr. Krishna, thereby violating the treating physician rule, and (2) failed to develop the record with respect to the medical opinion of Plaintiff's other treating physician, Dr. Suarez.

### 1. The ALJ did not properly address the findings of Plaintiff's treating physician Dr. Krishna

Plaintiff argues that the ALJ violated the treating physician rule by failing to discuss and failing to provide good reasons for rejecting the medical findings of Plaintiff's treating physician Dr. Krishna.  (Pl. Mem. 18.)  As a preliminary matter, contrary to Plaintiff's assertion that the ALJ "never even acknowledged Dr. Krishna's existence," (Pl. Mem. 18), the ALJ expressly cited

to Dr. Krishna's September 29, 2009 electromyogram test, (R. at 27). The ALJ noted that the electromyogram test "reveal[ed] evidence of chronic cervical and lumbosacral radiculopathies as well as moderate bilateral wrist neuropathy." (*Id.* at 27.) However, Plaintiff is correct that the ALJ did not discuss Dr. Krishna's express recommendation that Plaintiff "[r]estrict physical activity" and engage in "[n]o prolonged standing, walking, or sitting." (*Id.* at 178.) As discussed below, the Court agrees with Plaintiff and finds that the ALJ failed to adequately follow the treating physician rule with respect to Dr. Krishna's medical opinion that Plaintiff restrict physical activity and avoid prolonged standing, walking or sitting.

The relevant SSA regulations state that the ALJ will "evaluate every medical opinion" it receives. 20 C.F.R. §§ 404.1527(c) and 416.927(c). The SSA regulations also make the following promise: "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." *Id.*; *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (quoting 20 C.F.R. §§ 404.1527(c) and 416.927(c)); *Bolden v. Comm'r of Soc. Sec.*, 556 F. Supp. 2d 152, 165 (E.D.N.Y. 2007) ("[T]he ALJ must always give good reasons in her decision for the weight accorded to a treating source's medical opinion." (citation and internal quotation marks omitted)).

The ALJ did address Dr. Krishna's September 29, 2009 electromyogram test and presumably relied on the objective medical findings therein to conclude that Plaintiff suffers from severe medical impairments. (R. at 24–25.) However, the ALJ did not address Dr. Krishna's opinion that Plaintiff could not stand, walk or sit for a prolonged period. The ALJ only stated that he arrived at his findings and conclusions of law "[a]fter careful consideration of the entire record." (*Id.* at 24.) Assuming that Dr. Krishna's recommendation that Plaintiff avoid prolonged standing, walking or sitting was part of the "entire record" considered, the ALJ's

conclusion necessarily assigned little weight to Dr. Krishna's recommendation.[19]  This is so

because "light work" requires prolonged standing, walking and/or sitting.[20]  When an ALJ

---

[19]  Plaintiff seems to suggest that the ALJ's failure to *explicitly* discuss Dr. Krishna's opinion as to Plaintiff's functional limitations requires remand in and of itself.  In *Halloran v. Barnhart*, the Second Circuit encountered an ALJ decision where it was "unclear on the face of the ALJ's opinion whether the ALJ considered (or even was aware of) the applicability of the treating physician rule."  *Halloran*, 362 F.3d 28, 32 (2d Cir. 2004).  But, rather than immediately remanding for explicit acknowledgment and application of the treating physician rule, the Second Circuit conducted a "searching review" of the record to hold that the "substance of the treating physician rule was not traversed."  *Id.*  Still, the Second Circuit "emphasize[d]" that the Commissioner is required to provide good reasons for the weight accorded to a treating physician's opinion, and further stated that it would "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."  *Id.* at 33; *see also Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975) ("Consistent with this view of the Act, courts have not hesitated to remand for the taking of additional evidence, on good cause shown, where relevant, probative, and available evidence was either not before the Secretary or was not explicitly weighed and considered by him, although such consideration was necessary to a just determination of a claimant's application.").

[20]  Defendant argues that even if Dr. Krishna's opinion were to be given controlling weight, a restriction against prolonged standing, walking, or sitting "is not necessarily inconsistent with the RFC for light work."  (Def. Opp'n Mem. 3.)  Defendant's position is contrary to the plain language of the applicable SSA regulations.  Under § 404.1567, light work is defined as follows:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires *a good deal of walking or standing*, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

§ 404.1567(b) (emphasis added).  Social Security Ruling 83-10 elaborates on the requirements of light work: "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  Sitting may occur intermittently during the remaining time."  SSR 83–10; *see also Rivera v. Colvin*, No. 11-CV-7469, 2014 WL 3732317,

affords a treating physician's opinion little weight, the ALJ *must* consider the various factors set forth in 20 C.F.R. § 404.1527(c). *Halloran*, 362 F.3d at 32.

The ALJ's failure to address Dr. Krishna's findings concerning Plaintiff's functional limitations is troubling because the findings directly contradict the ALJ's ultimate conclusion that Plaintiff could perform a variety of light work. Even after a "searching review" of the record, the Court cannot say with certainty that the treating physician rule was followed. The ALJ's failure to discuss this critical medical finding from Plaintiff's treating physician and the ALJ's failure to provide "good reasons" for affording this opinion little weight necessitates remand. *See Coscia v. Astrue*, No. 08-CV-3042, 2010 WL 3924691, at *8 (E.D.N.Y. Sept. 29, 2010) ("However, the ALJ declined to accord [the plaintiff's treating physician's] assessment controlling, or even 'great,' weight. In making this decision, the ALJ did not take into consideration two of the relevant factors . . . . As consideration of these factors is mandatory, the ALJ's lapse mandates remand." (citations omitted)); *Bolden*, 556 F. Supp. 2d at 166 (finding that the ALJ's failure to assign any weight to the plaintiff's treating physicians' opinions required remand); *Hendricks v. Comm'r of Soc. Sec.*, 452 F. Supp. 2d 194, 201 (W.D.N.Y. 2006) ("Even when controlling weight is not accorded a treating physician's opinion, the ALJ still must describe what weight he gave to that opinion. He did not do so here and that was error."); *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 290 (E.D.N.Y. 2004) ("Factual determinations, based on the weighing of evidence, are within the ALJ's competence; however, in making these determinations, the ALJ must address the evidence on the record. . . . [T]he ALJ's failure to mention several parts of the record which contradict his conclusion constitutes error.");

---

at *39 (S.D.N.Y. July 28, 2014) ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8 hour workday" (quoting SSR 83–10)).

*Pogozelski v. Barnhart*, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004)

("Dr. Tanzer's opinion, as the opinion of a treating physician, should have been accorded

controlling weight, or if not, the ALJ was still required to apply the factors specified in the

regulations concerning treating physicians, to determine the degree of weight it deserved. The

failure to follow this rule, standing alone, requires demand." (citations omitted)).

### 2. The ALJ failed to develop record with respect to Dr. Suarez

The ALJ also failed to develop the record with respect to Dr. Suarez's medical opinion.

The ALJ noted that "Dr. Suarez is a treating specialist who refers to the findings in [Plaintiff's]

recent MRIs," which findings ostensibly supported Dr. Suarez's conclusion that Plaintiff's

degenerative diseases would not improve, that Plaintiff should think about retiring and that

Plaintiff is disabled. (R. at 28, 261.) Nevertheless, the ALJ emphasized "that Dr. Suarez offers

no opinion as to the [Plaintiff]'s actual physical limitations or abilities," and therefore gave Dr.

Suarez's opinion "little weight." (*Id.* at 28–29.) To the extent that the ALJ found the omission

of Dr. Suarez's opinion as to Plaintiff's "actual physical limitations or abilities" to be of critical

importance, it was the ALJ's duty to obtain all relevant information from Dr. Suarez, rather than

seize upon this documentary omission in order to undercut Dr. Suarez's medical conclusions.

*See Rivera v. Astrue*, No. 06-CV-3326, 2009 WL 705756, at *7 (E.D.N.Y. Mar. 16, 2009)

("With respect to treating physicians, ALJs must seek additional evidence or clarification when a

report 'contains a conflict or ambiguity that must be resolved, the report does not contain all the

necessary information, or does not appear to be based on medically acceptable clinical and

laboratory diagnostic techniques.'" (quoting 20 C.F.R § 404.1512(d))); *see also Johnson v.

Barnhart*, No. 02-CV-1704, 2004 WL 725309, at *4 (E.D.N.Y. Mar. 8, 2004) (remanding where

the ALJ "should have made efforts to obtain from the plaintiff's psychiatrist or psychologist a

more detailed description of the plaintiff's limitations"); *cf. Perez v. Chater*, 77 F.3d 41, 48 (2d

Cir. 1996) ("Because there is nothing to indicate . . . that the reports were *inconclusive*, the ALJ was not obligated to request further information . . . ." (emphasis added)). The ALJ's failure to fill a clear gap in the record compels remand.

### d. Credibility

Plaintiff argues that the ALJ improperly rejected subjective evidence of pain and functional limitation and failed to take into account Plaintiff's lengthy work history. (Pl. Mem. 21–22.) Defendants argue that the ALJ properly weighed Plaintiff's credibility. (Def. Mem. 21.)

While SSA regulations require an ALJ "to take the claimant's reports of pain and other limitations into account, he or she is not required to accept the claimant's subjective complaints without question." *Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (alteration omitted) (quoting *Genier*, 606 F.3d at 49). Rather, the ALJ evaluates the claimants' contentions of pain through a two-step inquiry. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged," including pain. *Genier*, 606 F.3d at 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)); *see also* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) . . . ."). If the ALJ finds such an impairment, at the second step, "the ALJ must then consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record.'" *Campbell*, 465 F. App'x at 7 (alteration in original) (quoting *Genier*, 606 F.3d at 49). The ALJ will consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports. *Whipple v. Astrue*, 479 F. App'x 367, 370–71 (2d Cir. 2012). To the extent that a claimant's allegations of pain "are not

substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."

*Meadors*, 370 F. App'x at 184 (citing § 404.1529(c)(3)(i)–(vii)). In conducting the credibility inquiry, the ALJ must consider seven factors.[21]

For purposes of judicial review, the Second Circuit has "long held that '[i]t is the function of the [Commissioner], not ourselves, . . . to appraise the credibility of witnesses, including the claimant.'" *Campbell*, 465 F. App'x at 7 (alterations in original) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)). Assuming all other aspects of the underlying proceedings adhered to the law, the ALJ's failure to explicitly reference Plaintiff's work history or medication would not require remand. *See Campbell*, 465 F. App'x at *7 ("Although it is true that 'a good work history may be deemed probative of credibility,' it remains 'just one of many factors' appropriately considered in assessing credibility." (quoting *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998))); *Wavercak v. Astrue*, 420 F.App'x 91, 94 ("That Wavercak's good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination."); *Sickles v. Colvin*, No. 12-CV-774, 2014 WL 795978, at *12 (N.D.N.Y. Feb. 27, 2014) (rejecting the plaintiff's claim that the ALJ's lack of specific mention to the type, dosage or side effects of any medication the Plaintiff was taking required remand and further

---

[21] The factors are:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

20 C.F.R. § 404.1529(c)(3)(i)–(vii); *Meadors v. Astrue*, 370 F. App'x 179, 183 n.1 (2d Cir. 2010) (quoting 20 C.F.R. § 404.1529(c)(3)(i)–(vii)).

noting that "[t]he choice of which evidentiary basis to utilize, in a written opinion, in order to justify a decision to accord a reduction in probative weight to a plaintiff's testimony is up to the ALJ").  However, as discussed above, the ALJ erred in not addressing the medical opinion of Dr. Krishna and further erred in failing to develop the record in order to adequately weigh Dr. Suarez's opinion regarding Plaintiff's functional limitations against that of Dr. Govindaraj. Therefore the ALJ could not properly assess Plaintiff's credibility.  *See* 20 C.F.R. § 404.1529 ("In evaluating the intensity and persistence of your symptoms, we consider *all of the available evidence*, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your symptoms affect you.  We also consider the medical opinions of your treating source and other medical opinions as explained in § 404.1527." (emphasis added)).  Upon remand, the ALJ must reevaluate Plaintiff's credibility against the medical opinions of Dr. Krishna and Dr. Suarez, along with the other evidence in the record.

### III. Conclusion

For the foregoing reasons, Defendant's motion for judgment on the pleadings is denied. Plaintiff's cross motion for judgment on the pleadings is granted.  The Court finds that the ALJ erred in failing to properly assess the medical opinion of Plaintiff's treating physicians Dr. Krishna and Dr. Suarez, and failed to fulfill his duty to develop the record before determining the weight to give to the opinion of the treating physicians.

The Commissioner's decision is vacated and this action is remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  The Clerk of Court is directed to close this case.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: August 28, 2014
        Brooklyn, New York